UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAMPAIGN LEGAL CENTER,

Plaintiff,

v.

CORRECT THE RECORD and
HILLARY FOR AMERICA,

Defendants.

Civil Action No. 23-75 (JEB)

MEMORANDUM OPINION

Plaintiff Campaign Legal Center's long-running dispute with Defendants Correct the Record and Hillary for America began in 2019, when CLC sued the Federal Election Commission. Its suit challenged the FEC's dismissal of an administrative complaint against CTR and HFA for failing to report millions of dollars' worth of alleged in-kind contributions in connection with the 2016 presidential campaign. After myriad twists and turns, that suit ended on December 8, 2022, when this Court held that the FEC's dismissal was contrary to law and remanded the matter to the Commission. The FEC, which had up to that point refused to participate in that case and had ceded its defense to intervenors CTR and HFA, then finally appeared to seek a stay of that remand pending its noticed appeal to the D.C. Circuit. During the pendency of that motion for stay, CLC initiated this private action against CTR and HFA under § 30109(a)(8)(C) of the Federal Election Campaign Act, which permits plaintiffs to bring a private lawsuit against the administrative respondents should the Commission not conform to a court's order in 30 days. Now that this Court has denied the FEC's motion to stay the prior

1

remand Order, HFA moves to stay this private action pending the FEC's appeal in that earlier case. Finding this time that the balance of the equities tips in favor of a stay, the Court will grant the Motion.

**I.      Background**

The legal, factual, and procedural background of this case has by now been covered numerous times by this Court and once by the D.C. Circuit. Campaign Legal Ctr. v. FEC, 334 F.R.D. 1, 3–4 (D.D.C. 2019) (CLC I); Campaign Legal Ctr. v. FEC, 466 F. Supp. 3d 141, 146–50 (D.D.C. 2020) (CLC II); Campaign Legal Ctr. v. FEC, 507 F. Supp. 3d 79, 81–83 (D.D.C. 2020) (CLC III); Campaign Legal Ctr. v. FEC, 31 F.4th 781, 784–88 (D.C. Cir. 2022) (CLC IV); Campaign Legal Ctr. v. FEC, No. 19-2336, 2022 WL 17496220, at *1–4 (D.D.C. Dec. 8, 2022) (CLC V). A brief summary of the dispute and the inception of this private action will therefore suffice here.

CLC is a non-profit campaign-finance watchdog group that filed an administrative complaint with the FEC in October 2016. CLC V, 2022 WL 17496220, at *2. It alleged that a Super PAC (CTR) had improperly coordinated expenditures with the Hillary Clinton campaign (HFA) without disclosing them as in-kind contributions and in gross violation of FECA's contribution limits. Id. CTR rejoined that this spending was appropriate because it fell under the so-called "internet exemption," which excludes certain expenses related to unpaid internet communications from the definition of in-kind contributions. Id.

Although the FEC's Office of General Counsel investigated the allegations and recommended finding reason to believe that several violations had occurred, the Commission itself rejected the OGC's recommendation and dismissed the administrative complaint without further action by a 2-2 deadlocked vote. Id. at *3. The controlling Commissioners, in a written

Statement of Reasons, agreed with CTR that its expenditures fell under FECA's internet exemption and therefore did not need to be reported as in-kind contributions. Id. They further concluded that insufficient record evidence existed to indicate that CTR had coordinated with HFA as to non-communications activities. Id.

In August 2019, CLC and one of its directors, Catherine Hinckley Kelley, filed suit challenging the FEC's dismissal order under 52 U.S.C. § 30109(a)(8). See Campaign Legal Ctr. v. FEC, No. 19-2336 (D.D.C.), ECF No. 1 (FEC Suit Compl.) at 22–23; see also id., ECF No. 15 (FEC Suit Amend. Compl.). The FEC, however, failed to garner the four affirmative votes required by 52 U.S.C. §§ 30106(c) and 30107(a)(6) to defend this civil suit and thus defaulted. CLC I, 334 F.R.D. at 3–4. Notwithstanding the Commission's default, this Court permitted HFA and CTR to intervene as Defendants in November 2019 over Plaintiffs' objection. Id. at 5–7. After an initial dismissal for lack of standing and subsequent reversal by the D.C. Circuit, see CLC II, 466 F. Supp. 3d at 146–50, rev'd, CLC IV, 31 F.4th 781, this Court rejected the controlling Commissioners' justifications for dismissing the administrative complaint in its Opinion on cross-motions for summary judgment. First, it held that their Statement of Reasons rested on a flawed and overly broad interpretation of the internet exemption. CLC V, 2022 WL 17496220, at *5–6. Second, it concluded that the controlling Commissioners' "analysis of CTR's offline activities flagrantly disregarded key pieces of evidence" and was therefore arbitrary and capricious. Id. at *7–8. The Court did not, however, delineate the full scope of the internet exemption and, instead, left it "to the expert Commission on remand to sketch the bounds of the . . . exemption and to more fully analyze the facts before it." Id. at *9.

The Commission filed its Notice of Appeal on December 21, 2022, approximately two weeks after this Court's decision. See Campaign Legal Ctr. v. FEC, No. 19-2336 (D.D.C.), ECF

No. 72 (Notice of Appeal). It then asked this Court to stay its remand Order pending that appeal. Finding that the FEC did not face irreparable harm without such a stay of that earlier proceeding — in part, due to CLC's initiation of this private action after the Commission's 30-day deadline to conform and the Commission's late entry into the litigation — this Court denied the motion. See ECF No. 1 (Compl.), ¶ 77; see 52 U.S.C. § 30109(a)(8)(C) (authorizing citizen suit when court declares dismissal of FEC complaint "contrary to law" and FEC fails to conform within 30 days). HFA now seeks to stay this private action pending the outcome of the FEC's noticed appeal. See ECF No. 8 (Motion to Stay).

## II.     Legal Standard

A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706–07 (1997) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Hisler v. Gallaudet University, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (quoting Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863–64 (9th Cir. 1979)). "The proponent of a stay bears the burden of establishing its need." Clinton, 520 U.S. at 708 (citing Landis, 299 U.S. at 255). In deciding whether to grant a stay, courts generally "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting Landis, 299 U.S. at 254–55). "[I]f there is even a fair possibility that the stay . . . will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255. In order to determine whether a stay

should issue under <u>Landis v. North American Co.</u>, 299 U.S. at 255–59, this Court considers three factors: (1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay — that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources. District courts "may not 'order a stay of indefinite duration in the absence of a pressing need.'" <u>Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain</u>, No. 18- 1148, 2020 WL 417794, at *2 (D.D.C. Jan. 27, 2020) (alteration omitted) (quoting <u>Belize</u>, 668 F.3d at 732–33).

Once a stay is imposed, the Court may lift it "[w]hen circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate." <u>Marsh v. Johnson</u>, 263 F. Supp. 2d 49, 52 (D.D.C. 2003). In determining whether to do so, the Court retains the same "inherent power and discretion" it exercised to impose the stay. <u>Id.</u>

**III.   Analysis**

The Court considers each <u>Landis</u> factor independently.

A. <u>Harm to Nonmoving Party</u>

It begins with potential harms to the nonmoving party, CLC. The principal hardship that CLC identifies is yet more delay in obtaining the disclosures it seeks from HFA and CTR. See ECF No. 13 (Opp.) at 15–16 (noting that further delay would "exacerbate the harms" to CLC's informational interests in the contribution disclosures it seeks). Indeed, as this Court recognized in its Opinion denying a stay in the initial suit between CLC and the FEC, it has "been over six years since CLC first filed its administrative complaint with the FEC and over three years since the initiation of this suit." <u>Campaign Legal Ctr. v. FEC</u>, No. 19-2336 (D.D.C. Feb. 1, 2023), ECF No. 80, at 8. HFA's insistence that further delay is without consequence in part because the information CLC seeks concerns "transactions that occurred over six years ago," Motion for Stay

at 13, would perversely imply that delays are acceptable so long as they are preceded by many more delays.

The delay from a stay, however, would be only slight. That is because the Court here would be granting a stay only pending the outcome of a "single related appeal," ECF No. 15 (Reply), at 4, whose most likely conclusion would be a merits panel decision by the D.C. Circuit. Such a decision is most likely to arrive in a matter of "months, rather than years." Unión Fenosa Gas, S.A. v. Arab Republic of Egypt, No. 18-2395, 2020 WL 2996085, at *5 (D.D.C. June 4, 2020); compare Campaign Legal Ctr. v. 45Committee Inc., No. 22-1115, 2022 WL 3088595, at *1 (D.D.C. July 18, 2022) (denying stay in case involving three related matters at various stages of litigation with "no assurance as to when any of the three related matters will conclude"). CLC gestures toward potential appellate rehearing or further review that would increase the uncertainty over the length of a potential stay, see Opp. at 12–13, but such additional layers of review are rarely granted and, at this stage, are purely hypothetical. In any event, should the appeals process take longer than expected, the Court may lift its stay if "circumstances . . . change[] such that the court's reasons for imposing the stay no longer exist or are inappropriate." Marsh, 263 F. Supp. 2d at 52. Contrary to Plaintiff's Opposition, then, HFA is not seeking "a stay of indefinite duration." Opp. at 9 (quoting Belize Soc. Dev. Ltd. v. Belize, 668 F.3d 724, 731–32 (D.C. Cir. 2012)). Given the relatively limited scope of a stay at this juncture, HFA therefore does not need to show the type of "pressing need" that CLC contends is required for such a motion. See Belize, 668 F.3d at 732 (requiring "finding of a pressing need under Landis" only when stay is "sufficiently indefinite").

As a result, this factor tilts only slightly against granting the stay.

B.  Need for Stay

On the other side of the ledger, HFA persuasively establishes that allowing this private action to proceed before the FEC's appeal is decided would cause it to suffer significant and potentially irreversible hardship.  See Motion for Stay at 12–13.  First, CLC's private action is aimed at compelling HFA to disclose via public filing with the FEC information including "disclosure reports to include complete and correct information about any in-kind contributions, in the form of coordinated expenditures, compensation for personal services, and other things of value, made by CTR and/or received by HFA."  ECF No. 1 (Compl.), at 25.  If, however, it turns out that the FEC is correct in its interpretation of the internet exemption on appeal, then HFA will have been required to needlessly disclose these records publicly, a move that cannot realistically be undone.  In addition, proceeding with this suit during the pendency of the FEC's appeal would impose litigation costs, including engaging in discovery, which may later be obviated by a favorable D.C. Circuit decision.  See Motion for Stay at 12.  CLC responds that such discovery and costs of adjudication will only increase over time, see Opp. at 16–17; however, any marginal change in the cost of litigation between now and when the FEC's appeal is decided is purely speculative and likely to pale in comparison to the unnecessary burden that HFA will have endured should the appeal go its way.

This factor, therefore, weighs in favor of a stay.

C.  Efficient Use of Judicial Resources

Finally, the Court considers whether a stay would promote efficient use of its resources.  The answer is clearly yes.  CLC's private action concerns the same transactions and communications that were the subject of its administrative complaint and its earlier suit against the FEC.  Specifically, CLC's latest Complaint alleges that CTR improperly coordinated

7

expenditures with HFA without disclosing them as in-kind contributions in violation of 52 U.S.C. §§ 30116, 30118, and 30104.  See Compl., ¶¶ 79–90.  The central legal question underlying those claims is the same question as was at issue in CLC's earlier suit challenging the FEC's dismissal of its administrative complaint: whether CTR's activities qualified as in-kind contributions or, alternatively, whether CTR's spending was appropriate because it fell under the FEC's so-called "internet exemption," which excluded certain expenses related to unpaid internet communications from the definition of in-kind contributions.  See CLC V, 2022 WL 17496220, at *2.  Because "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests regarding time, cost, and effort," Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc., 274 B.R. 1, 3 (D.D.C. 2002), it would be prudent to allow the D.C. Circuit to weigh in before proceeding here.

      CLC perplexingly argues that the FEC's appeal is "unlikely to otherwise affect the course of these proceedings."  Opp. at 24.  Beyond the obvious common legal question driving both this private action and that appeal, however, it is clear that the D.C. Circuit's decision would necessarily influence this litigation no matter how the Circuit decided that question.  If, for example, the Circuit reverses this Court's earlier Opinion on either its contrary-to-law or arbitrary-and-capricious grounds, then it is substantially likely that this Court's jurisdiction to hear CLC's citizen suit would be removed.  See Reply at 16 (citing Campaign Legal Ctr. v. FEC, No. 21-406, 2022 WL 1978727, at *3 (D.D.C. June 6, 2022)) (noting that a previous finding "whether the Commission's [action] was contrary to law and whether it conformed with [that] Court's order to act implicate[d] that court's subject-matter jurisdiction").  CLC responds to this point by noting that, should this Court's jurisdiction over the citizen suit come into question following the D.C. Circuit's decision, Defendants could simply move to dismiss.  See Opp. at 24.

That, however, does nothing to eliminate the risk the Court outlined above that Defendants would be required to turn over records and incur costs in the meanwhile that may not otherwise be necessary depending on the outcome of the FEC's appeal. Finally, even if the Circuit affirms this Court's prior ruling on the internet exemption, its guidance on the scope of that exemption would help answer questions that this Court explicitly reserved judgment on, such as whether and to what extent "input costs" for unpaid internet communications can qualify for the exemption. See CLC V, 2022 WL 17496220, at *9 (refusing to delineate full scope of internet exemption and, instead, leaving "to the expert Commission on remand to sketch [its] bounds . . . and to more fully analyze the facts before it").

\*   \*   \*

In sum, although it is regrettable that resolution of the issues in this case continues to be prolonged — in part, owing to the FEC's recalcitrance early in this litigation saga — the balance of equities favors a stay here. In all likelihood, the parties will achieve a final resolution of the central legal claims at issue here in a reasonably short period of time when the D.C. Circuit rules on the merits of the FEC's appeal. Pausing this action now will preserve judicial resources and avoid the preventable harm of irreversible disclosure of records that may be obviated on appeal.

### IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Stay. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 7, 2023